IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| **WILLIAM C. MITCHELL**, | ) | C/A 2:07-3259-PMD-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **SHERIFF AL CANNON**, personally and in his official capacity, **CHARLESTON COUNTY SHERIFF DEPARTMENT, DEPUTY STEPHEN C. GATES**, personally, **TIMOTHY RICHARD BRANHAM**, personally, and **CYPRESS RECOVERY**, | ) ) ) ) ) ) ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |

This action was originally filed by the Plaintiff, pro se, in the South Carolina Court of Common Pleas. Plaintiff asserts claims pursuant to, inter alia, 42 U.S.C. § 1983.

As Plaintiff asserts claims under federal law, this matter was removed to the United States District Court by the Defendants Cannon, Charleston County Sheriff's Department, Gates and Rood.[1] All of the Defendants have answered, and the Defendants Cannon, Charleston County Sheriff's Department and Gates filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on August 26, 2008. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on August 27, 2008, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted. Thereafter,

---

[1]Although originally named as a Defendant, Deputy Chad Rood is now deceased, and is no longer a defendant in this action. See Stipulation of Dismissal (Court Docket No. 53).

1



the Defendants Branham and Cypress Recovery filed a motion for summary judgment on August 29, 2008, following which a second Roseboro order was entered on September 2, 2008.

Plaintiff filed a memorandum in opposition to the motions for summary judgment as well as his own motion for summary judgment on September 19, 2008, following which reply memoranda were filed on September 25, 2008 and September 29, 2008. Plaintiff also filed reply memoranda on October 1, 2008 and October 3, 2008, following which another reply was filed by the Defendants Cannon, Charleston County Sheriff's Department and Gates on October 17, 2008.

These motions are now before the Court for disposition.[2]

### Background and Evidence

Plaintiff alleges in his complaint[3] that on or about September 27, 2005, he saw someone hanging around his car in his carport (later identified as the Defendant Branham). This was at 9:30 p.m. It turned out that Branham was attempting to repossess Plaintiff's vehicle, and Plaintiff alleges that after a short physical confrontation Branham left. Plaintiff alleges that he then called 911, and that the Defendant Gates responded to his 911 call. Plaintiff alleges that he told Gates that if someone attempts to "self help" repossess and they are told by the owner to leave the property,

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The parties have filed motions to dismiss or for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, Plaintiff has filed an *unverified* Complaint. Therefore, the undersigned has not considered the factual allegations set forth in the unverified Complaint as evidence in issuing a recommendation in this case. Moran v. Selig, 447 F.3d 748, 759 (9th Cir. 2006) [holding that unverified complaint "cannot be considered as evidence at the summary judgment stage"].

2



then they must leave and not return. However, Plaintiff alleges that another Deputy who was present (Deputy Rood), at that point arrested him for assault and battery (arising from his confrontation with Branham). Plaintiff alleges that when he was taken to the patrol car, he saw that Branham had returned with his wrecker, and that when he asked Deputy Rood what Branham was doing there, Rood told him that he was there "to repossess your car." Plaintiff alleges that he then told the deputies that Branham could not repossess his car without a court order, and that the deputies told him they had a court order signed by a "federal judge" but that he [Plaintiff] did not need to see it. Plaintiff's son was then required to provide keys to move another vehicle in order that Plaintiff's car could be repossessed. Plaintiff further alleges that he was also later charged with fraud.

Plaintiff alleges that by the time he got to the "sally port" area of the jail, Deputy Gates arrived with Branham in the back of his car, at which time Plaintiff was advised that Branham had also been arrested on some outstanding warrants dealing with "frequent checks". Plaintiff alleges that Rood and Gates both knew about the outstanding warrants for Branham prior to their bringing Branham back to his house to repossess his car. Plaintiff also alleges when he went to bond court the following day after his arrest, the bond court judge stated that Branham did not have any court papers allowing for the repossession.

Plaintiff sets forth eleven (11) courses of action in his complaint. Plaintiff first alleges that Rood, the Defendant Gates, as well as the Charleston County Sheriff's Department and Sheriff Al Cannon violated his constitutional rights because they knew or should have know that their actions were illegal and beyond the scope of their duty. Plaintiff alleges that, in addition to allowing the improper seizure of his vehicle, these defendants violated his rights by "falsely detaining him, searching him, and falsely imprisoning him." Plaintiff also alleges that Branham repossessed the



wrong vehicle, and that these Defendants would have known that if they had properly reviewed the repossession documents. (First Cause of Action).

Plaintiff also alleges that these Defendants, as well Branham and his employer, the Defendant Cypress Recovery, violated the Fair Debt Collection Practices Act because they "knew or should have know that the use of the Charleston County Sheriff Department and/or its Deputies to enforce any collection of a debt is illegal without a written court order." (Second Cause of Action). Plaintiff further alleges that the Defendants conduct violated "Article 9" of the Uniform Commercial Code (Third Cause of Action), violated the South Carolina Debtor Collection Action (Fourth Cause of Action), that their conduct constituted an "abuse of process and authority" (Fifth Cause of Action), that the Defendants engaged in an unlawful conspiracy (Sixth Cause of Action), that their conduct constituted a "breach of the peace" (Seventh Cause of Action), that their conduct violated the "Castle Doctrine" (Eight Cause of Action), that their conduct constituted an illegal search and seizure (Ninth Cause of Action), that their action constituted an unlawful conversion of his vehicle (Tenth Cause of Action), and that the Defendants' actions violated his right to liberty, to privacy, to due process and to equal protection in violation of the Fourth Amendment (Eleventh Cause of Action). Plaintiff seeks monetary damages. See generally Complaint.

In support of summary judgment in the case, the Defendants have submitted numerous exhibits including depositions, correspondence, affidavits, letters and financial documents, and court filings. These documents generally reflect that Plaintiff's automobile loan company (Auto Money Title Loans) had contracted with the Defendant Cypress Recovery to repossess a vehicle, offer testimony concerning the events on the night at issue, and that at that time Plaintiff had an outstanding warrant for his arrest for other charges. See generally, Defendants Gates, et al. Motion



for Summary Judgment, Exhibits A-I; Defendants Branham, et al. Motion for Summary Judgment, Exhibits A-G.

In his response filed in opposition to the Defendants' motions, Plaintiff has also submitted copies of some depositions; see Plaintiff's Response in Opposition, Deposition Exhibits; as well as some other exhibits including an incident report, photographs and other documents. See Plaintiff's Memorandum in Opposition, Exhibits A-N.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.
(Proper Party Defendants Under Plaintiff's Federal Constitutional Claims)**

With respect to Plaintiff's federal constitutional claims (set forth in Plaintiff's First, Ninth, and Eleventh causes of action), these claims must be pursued in this court through 42 U.S.C.

5



§ 1983, which is the procedural mechanism through which Congress has provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. See Jennings v. Davis, 476 F.2d 1271, 1275 (8th Cir. 1973). As public officials, the Defendants Cannon and Gates are subject to suit for damages under § 1983 in their individual capacities; Gomez v Toledo, 446 U.S. 635, 640 (1980); and giving Plaintiff's allegations the liberal construction to which they are entitled, the undersigned has considered his federal constitutional claims against these two Defendants as being asserted against them in their individual capacity.

Plaintiff has also apparently intended to sue the Charleston County Sheriff's Department under his § 1983 causes of action. However, as an arm of the State of South Carolina, the Charleston County Sheriff's Department is entitled to immunity from suit under Plaintiff's § 1983 claims, and is therefore entitled to dismissal as a party Defendant under these claims. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99 (1984); Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989); Brooks-McCollum v. Delaware, 213 Fed.Appx.92, 94 (3rd Cir. 2007); Metz v. Supreme Court of Ohio, 46 Fed.Appx. 228, 236-237 (6th Cir. 2002); see also Coffin v. South Carolina Dep't of Social Services, 562 F.Supp. 579, 583-585 (D.S.C. 1983); Belcher v. South Carolina Board of Corrections, 460 F.Supp. 805, 808-809 (D.S.C. 1978).

Finally, to the extent Plaintiff has intended to include the Defendants Branham and/or Cypress Recovery as party Defendants under his § 1983 claims, it is readily apparent from the filings before this court that both of these Defendants are private individuals and/or entities not subject to suit in this court under § 1983. Gomez, 446 U.S. 640 [To state a cause of action under § 1983, Plaintiff must show that the named Defendants deprived him of a federal right, and did so under color of state law]; see also Dixon v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has



burden of setting forth facts sufficient to state all of the elements of a claim]. Where private actors are involved, their activity will generally not be deemed "state action" unless the State has so dominated the activity as to convert it into state action. Debauche v. Trani, 191 F.3d 499, 506-507 (4th Cir. 1999), cert denied 529 U.S. 1033 (2000). Here, in pursuing the conduct they did, whether rightly or wrongly, the Defendants Branham and/or Cypress Recovery were operating pursuant to state statute, which allows for private recovery actions. See S.C.Code Ann. § 36-9-609. Repossession of a private vehicle by a private company pursuant to a contract, even though allowed by state law, does not constitute "state action" for purposes of a § 1983 claim. See Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 157-160 (1978). No evidence has been presented to show that these Defendants' actions (the alleged repossession of a vehicle belonging to the Plaintiff) was due to a "state-enforced custom", was the result of the State conferring "sovereign power" on these Defendants (performing a function which is traditionally the exclusive prerogative of the state"), or was the result of a state delegation of its obligations to these Defendants. See Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 341-342 (4th Cir. 2000); see also Andrews v. Federal Homeland Bank of Atlanta, 998 F.2d 214, 217 (4th Cir. 1993); Peterson v. City of Greenville, 373 U.S. 244, 248 (1963); Adickes v. S H Kress Co., 398 U.S. 144, 170 (1970)[holding that private entity only acts under color of law if private action was "because of a state-enforced custom"]; United Auto Workers v. Gaston Festivals, Inc., 43 F.3d 902, 906 (4th Cir. 1995)[Private actor may be responsible as a state actor only if "the function performed [is] traditionally the exclusive prerogative of the state"]. Nor does the private Defendants' conduct here fit within the four criteria recognized by the Fourth Circuit Court of Appeals to evaluate whether private conduct constitutes state action, since there is no evidence that the Sheriff's Department regulates the Defendant company, it does not



provide the Defendants any public benefit or assistance, nor is there any evidence that it regards the Defendants to be state actors. Goldstein, 218 F.3d 343.

While there is support for the proposition that a private repossessor may be deemed a state actor where the police act in concert with them and take an active role in the repossession; Cf. Barrett v. Harwood, 189 F.3d 297, 302 (2d Cir. 1999); Soldal v. Cook County, Ill., 506 U.S. 56, 60 n. 6 (1992); there is no evidence that any state-actor defendant engaged in such conduct in this case. See discussion regarding the Defendants Cannon and Gates, infra. Therefore, to the extent Plaintiff has intended to include the two private Defendants as Defendants under his § 1983 causes of action, they are entitled to dismissal as party Defendants under these claims.

## II.
**(Section 1983 Claims Asserted Against Defendant Cannon)**

With respect to the Defendant Sheriff Al Cannon, although he is subject to suit under § 1983, there is no evidence, nor even any allegations in the Complaint, that this Defendant had anything whatsoever to do with the events surrounding Plaintiff's claims. See also Cannon Affidavit. Rather, it is readily apparent that the only reason Cannon has been named as a Defendant in this case is because he is the Sheriff of Charleston County (and for whom the Defendant Gates presumably works). The fact that Gates may work for Cannon is not, however, sufficient to allow Plaintiff to maintain a § 1983 claim against Cannon, as the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977).

Since Plaintiff has set forth no allegations of specific wrongdoing by the Defendant Cannon, he may not be held liable for the acts of Gates or others absent an official policy or custom for which he was responsible and which resulted in illegal action. See generally, Monell v. Dep't



of Social Servs., 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C. 1987); Stubb v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992); see Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)). Plaintiff has made no claim of any official policy or custom of the Defendant Cannon which resulted in the allegedly unconstitutional conduct here. To the contrary, Plaintiff specifically alleges (and argues in his response to the Defendants motions for summary judgment) that the actions of the Defendant Gates and others were in violation of proper procedure and were the result of an "unlawful" conspiracy to allow for the "illegal" repossession of his vehicle.

Therefore, the Defendant Cannon is entitled to dismissal as a party Defendant in this case. Cf. Hyrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) ["[T]here is no pure respondeat superior liability under §1983, [and] a supervisor [may only be held] liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.' "(quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989))].

### III
### (Section 1983 Claims Asserted Against Defendant Gates)

With respect to the conduct of the Defendant Gates, after careful review of the arguments and evidence presented, the undersigned finds that Plaintiff's § 1983 claims against this Defendant fail to raise a genuine issue of fact as to whether Plaintiff's constitutional rights were

9



violated by this Defendant, and should therefore be dismissed.

First, to state a valid claim for false arrest, Plaintiff must show that an arrest was made without an arrest warrant. See Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998)["[A] claim for false arrest may be considered only when no arrest warrant has been obtained"]; Brooks v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996). Here, the evidence is undisputed that Plaintiff was arrested the night of September 27, 2005 on an outstanding warrant for failure to maintain records, as is shown by Defendants' Exhibit I (copy of arrest warrant dated April 27, 2005, executed September 27, 2005). Further, Plaintiff has himself provided a copy of the second warrant charging him with common law assault and battery (see Plaintiff's Exhibit N), as well as a copy of Defendant Gates' deposition testimony wherein Gates testified that he was advised by Branham that Plaintiff had assaulted him, that he [Gates] observed that Branham's shirt had been ripped, and that he had probable cause to arrest Plaintiff on this charge. Gates Deposition, pp. 51-52. Defendants have also provided copies of Branham's Deposition, where he testified that Plaintiff had attacked him, as well as a copy of Plaintiff's own Deposition, in which Plaintiff admitted having grabbed and shoved Branham. Branham Deposition, p.26; Plaintiff's Deposition, pp. 33, 120. Gates further testified that, in addition to being arrested on the previous outstanding warrant, Plaintiff's arrest that night for simple assault and battery pursuant to a citation was proper, and that sheriff's deputies don't have any discretion with respect to that charge, that once the citation is issued the person has to be arrested and taken into custody. Gates Deposition, pp. 19, 40.

Plaintiff has not provided any evidence to contest these findings. Therefore, his claim for false arrest is without merit. Further, this evidence also fails to present a genuine issue of fact as to whether Plaintiff was subjected to false imprisonment on the night he was arrested. Jones v.



City of Columbia, 389 S.E.2d 662, 663 (S.C. 1990)["An action for false imprisonment cannot be maintained where one is arrested by lawful authority"]; see also Wallace v. Kato,127 S.Ct. 1091, 1095 (2007)["False arrest and false imprisonment overlap; the former is a species of the latter . . . . [t]he sort of unlawful detention remediable by the tort of false imprisonment is detention without legal process . . . ."]; Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996)[In assessing the existence of probable cause, courts examine the totality of the circumstances known to an officer at the time of the arrest]; Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002)[to prove the absence of probable cause, Plaintiff must set forth sufficient facts to show that a reasonable officer would not have been justified in concluding that he committed the criminal act at issue].[4]

       Plaintiff's claims against this Defendant for a due process violation are also without merit. Plaintiff claims in his Ninth Cause of Action that Gates "at no time had any legal papers or court order which could be relied upon to search [his] vehicle, seizure of and take and/or repossess this vehicle . . . ." However, while the Constitution requires notice and a prior hearing before a state can assist a secured creditor in the repossession of a debtor's property, the evidence does not show that Gates' conduct on the night in question assisted the secured creditor here in the repossession of the creditor's property so as to subject him to § 1983 liability. Vakkas v. Tyson Associates, No. 98-4981, 2000 WL 325916, * 5 (E.D.Pa. March 28, 2000)["The case law dealing with police involvement in private repossession resulting in §1983 actions provides a range of scenarios, some of which lead to liability and some of which do not"]. Under the applicable case law, where a police

---

[4]Since Gates was properly on Plaintiff's property for a legitimate law enforcement purpose and Plaintiff's false arrest and false imprisonment allegations are subject to dismissal, Plaintiff's additional claim of a "privacy" violation in this cause of action is also without merit. Arnold v. Truemper, 833 F.Supp. 678, 684 (N.D.Ill. 1993); Cf. Lowe v. Surpas Resource Corp., 253 F.Supp. 2d 1209, 1237 (D.Kan. 2003)



officer actively aides the private repossessor in an improper seizure of property, liability under § 1983 cannot occur.  However, where the police officer is "merely present" during the repossession, even if the repossession itself was otherwise accomplished without the proper legal process, no *constitutional* violation has occurred.  Cf. Vakkas, 2000 WL 325916, at * 5-7; Barrett, 189 F.3d at 301-303.

Here, the evidence (considered in the light most favorable to the Plaintiff) shows that Officer Rood, who was also present on the evening in question, told the Plaintiff that he had a federal court order for repossession of the vehicle (which apparently was not the case) and also instructed Plaintiff's son to move a vehicle that was blocking the vehicle to be repossessed in order that the repossession could take place.  Plaintiff's Deposition, pp. 36-37, 49-50; S. Mitchell Deposition, pp. 20-23[5].  Indeed, Plaintiff's son acknowledges that his contact was "pretty much with one officer [Rood]", while the other officer [Gates] "pretty much stood off by the car and was just observing what was going on."  S. Mitchell Deposition, p. 22.  Further, the actual repossession did not take place until after Plaintiff had been taken away by Rood in his police car.  At that point, according to Plaintiff's son, Gates:

> Pulled up to the edge of our yard in the road.  The wrecker driver then came in and hooked up the car.  [Gates] stayed until [Branham] had the car hooked up and when the wrecker pulled out of the yard [Gates] pulled off in front of his.
>
> Question:    Did [Gates] stay in his car the whole time [while Branham was repossessing Plaintiff's automobile]?

---

[5]On some of these deposition pages the officer involved in these actions is only identified as "he" or "him".  However, it is clear from Plaintiff's testimony that it was Officer Rood who gave the instructions to move the car blocking the vehicle to be repossessed, and took Plaintiff's son to talk with the Plaintiff in the back of the police car.  Plaintiff's son's testimony indicates that this same officer was the one who said that he had a "court order signed by a federal judge" for repossession of the property.



  Answer:  Yes.

Stanley Mitchell Deposition, p. 24.

  Based on the facts and circumstances as testified to by the Plaintiff and his son, considered in the light most favorable to the Plaintiff, a material issue of fact might exist as to whether *Officer Rood* was neutral in his effort to keep the peace or affirmatively aided Branham in the taking of Plaintiff's property. However, with respect to the Defendant Gates, there is no evidence to suggest that he did any more than merely acquiesce or stand by in case of trouble. Based on Plaintiff's own evidence, Gates did not give any instructions to either the Plaintiff or his son, nor did he affirmatively assist Branham in any way. Even after Rood had left with the Plaintiff, and Gates remained at the location, he stayed in his car on the edge of the property while Branham hooked up the vehicle for towing and towed the vehicle away. Branham Deposition, p. 45. Gates then left once it was certain no further confrontations were imminent.

  The undersigned can discern no genuine issue of fact with regard to whether Gates violated Plaintiff's due process rights based on this evidence. Marcus v. McCollum, 394 F.3d 813, 818-819 (10th Cir. 2004)["When a police officer is involved in a private party's repossession of property, there is no state action [for purposes of § 1983] if the officer merely keeps the peace, but there is state action if the officer affirmatively intervenes to aid the repossessor enough that the repossession would not have occurred without the officer's help"]. Further, even if the Court were to conclude that the other officer present that night may have committed a due process violation, that does not mean Gates would also be liable. Southwestern Bell Yellow Page v. Ross, No. 05-531, 2006 WL 572392, at * 4 (W.D.O. March 8, 2006)[Finding that defendant police officer who did nothing more than merely acquiesce or stand by in case of trouble was entitled to dismissal as a party

13



defendant, even if another officer affirmatively aided the private repossessor and was therefore not entitled to summary judgment].

As for Plaintiff's claim of an illegal search, both Plaintiff's son and wife testified that they saw Gates search the car prior to it being towed; see S. Mitchell Deposition, pp. 25-26, 45-46; V. Mitchell Deposition, pp. 79-80; allegations which the undersigned has considered to be true for purposes of summary judgment.[6] Defendants argue that, even if such a search occurred, there is no evidence that anything was taken from the vehicle, nor was Plaintiff charged with any crime stemming from any possible inspection or search of the vehicle; see, S. Mitchell Deposition, p. 27-28; and as there is no evidence that Plaintiff suffered any damages as a result of this alleged search, Gates is entitled to summary judgment on this claim. See Grandstaff v. Borger, 767 F.2d 161, (5th Cir. 1985)[There is in general no constitutional right to be free from emotional distress or mental anguish]; Strickler v. Waters, 989 F.2d 1375, 1380-1381, n. 9 (4th Cir. 1993)[mere incantation of injury insufficient to avoid summary judgment]. While agreeing that no actual damages have been shown, the undersigned does not agree with the Defendants that this would necessarily result in a dismissal of this claim, as nominal damages could conceivably be awarded even if no actual damages were incurred. Cf. Ruggiero v. Krzeminski, 928 F.2d 558, 563-564 (2nd Cir. 1991). Nevertheless, this claim is still subject to dismissal, because Plaintiff did not own the vehicle in question. Rather, it was owned by his wife. See V. Mitchell Deposition, pp. 17, l. 4-6; 21, l. 15-22. Hence, even if an illegal search occurred, Plaintiff may not base a § 1983 claim on a violation of the rights of third parties. Cf. Barber v. Overton, 496 F.3d 449, 458 (6th Cir. 2007)[(No standing for persons injured as a result of the government's violation of another person's rights, "no matter how interrelated the

---

[6]Gates denies ever having searched Plaintiff's vehicle. Gates Deposition, pp. 23-24.



harms suffered."]; <u>Miner v. Brackney</u>, 719 F.2d 954, 956 (8th Cir. 1983) [claim subject to dismissal where alleged deprivation was of someone else's constitutional rights, which plaintiff had no standing to assert]; <u>Singleton v. Wulff</u>, 428 U.S. 106, 113 (1976)["Federal Courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation."]. Therefore, Plaintiff's illegal search claim must be dismissed.

Finally, Plaintiff also asserts in his Eleventh cause of action that he was denied his right to "equal protection". Such a general and conclusory statement, without any supporting evidence, cannot maintain such a claim. While allegations of different treatment based on race can give rise to a claim under §1983; <u>see</u> <u>Buford v. Sutten</u>, No. 04-959, 2005 WL 756092, at * 3 (W.D.Wisc. Mar. 29, 2005)["An individual seeking relief on a claim of race discrimination under the equal protection clause must allege facts suggesting that a person of a different race would have been treated more favorably."]; Plaintiff has presented no evidence whatsoever to support such a claim, or to even show what his race or the races of the other individuals involved is. This claim is without merit.

## IV.
## (Fair Debt Collections Practices Act Claim)

Plaintiff also asserts a federal claim under the Fair Debt Collections Practices Act (FDCPA). No evidence has been presented to the Court to support such a claim.

Plaintiff alleges that the Defendants "knew or should have known that the use of the Charleston County Sheriff Department and/or its deputies to enforce [] a collection of a debt is illegal without a written court order." <u>Complaint</u>, Second Cause of Action. However, Plaintiff does not cite to any specific section of the FDCPA which he contends has been violated as a result of the

15



Defendants alleged conduct. Further, Plaintiff does not deny, and indeed admits, that he entered into a loan agreement with Auto Money Title Loans on April 12, 2005, which was in turn secured by an automobile owned by the Plaintiff, and that he had received a right to cure notice informing him of an alleged default on this loan and of the lender's right to repossess the vehicle as a result of this default. See Defendant Branham and Cypress Recovery's Exhibits A and B (Loan agreement, promissory note and security agreement, and right to cure notice). South Carolina law allows a secured party, after default of a borrower, to take possession of the collateral security securing the loan, and allows the secured party to proceed to do so without judicial process as long as there is no breach of the peace. See S.C.Code Ann. §§ 36-9-603(a), 609(b). Plaintiff also does not dispute that he is in default on this loan, and does not contest Auto Money Title Loans right to take possession of the vehicle. Plaintiff's Deposition, pp. 110-111, 116-117.[7]

The undersigned can discern no violation of the FDCPA under the facts and evidence presented in this case. Cf., Seibel v Society Lease, Inc., 969 F. Supp. 713, 716-717 (M.D. Fl. 1997)[Repossession company not a "debt collector" for purposes of FDCAA claim].

## V.
### (State Law Claims)

Finally, with respect to Plaintiff's remaining state law causes of action[8], if the Court

---

[7]While Plaintiff apparently (at least at one time) tried to argue that the wrong car was taken, the evidence clearly shows that the correct car (the black Mercedes) was the car repossessed that night. Plaintiff's Deposition, pp. 114-117; V. Mitchell Deposition, pp. 21-22. Cf. Jordan v. Kent Recovery Services, Inc., 731 F. Supp. 652, 656-659 (D. Del. 1990).

[8]With respect to Plaintiff's sixth cause of action for conspiracy, this claim does not cite to or seek any federal relief. The undersigned has already addressed Plaintiff's claims that the state-actor Defendants arrested him illegally and/or illegally seized the automobile; see discussion, supra; and to the extent any further claims or assertions are made they are reviewable as a state law conspiracy
(continued...)

16



adopts the recommendations set forth herein with regard to Plaintiff's federal claims, these pendant state law claims will be the only claims remaining in this law suit. When federal claims presented in a case originally filed in state court are dismissed, any remaining state law claims should be remanded back to state court for resolution under the general doctrine developed in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). See In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Melon v. Cohill, 484 U.S. 343 (1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996).

Remand of these remaining state law causes of action will not only allow the more appropriate court to rule on these exclusively state law claims, but will not prejudice the parties. As these claims have already been briefed, the parties may seek a fast track for resolution of these claims at the state level. See Rule 40(c), S.C.R.Civ.P. Additionally, if summary judgment were to be denied, it would be much more appropriate for these state law claims to be considered and tried by the state courts.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motions for summary judgment with respect to Plaintiff's federal claims asserted in this lawsuit be **granted,** and that those claims be dismissed. It is further recommended that Plaintiff's remaining state law claims be **remanded** back to state court for disposition. Plaintiff's motion for summary judgment should be **denied**.

---

[8](...continued)
claim.





The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 10, 2009

Charleston, South Carolina



18

**Notice of Right to File Objections to Report and Recommendation**

      The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

      Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29401

      **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

