# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| WILLIAM C. MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:07-cv-3259-PMD-BM |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Sheriff AL CANNON, personally and in his individual capacity, CHARLESTON COUNTY SHERIFF DEPARTMENT, Deputy STEPHEN C. GATES, in his personal capacity, TIMOTHY RICHARD BRANHAM, in his personal capacity, and CYPRESS RECOVERY, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

This matter is before the court on Plaintiff's *pro se* claims originally filed in the Charleston County Court of Common Pleas. Plaintiff asserts a number of claims for relief arising out of his arrest and the repossession of a vehicle in his possession. This matter was removed to federal court by Defendants, who then filed two Motions for Summary Judgment. In responding to these Motions, Plaintiff filed a Motion for Summary Judgment of his own. The case contains a Report and Recommendation ("R&R") of United States Magistrate Judge Bristow Marchant ("the Magistrate Judge") in accordance with 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff has filed timely Objections to the Magistrate Judge's R&R.

## BACKGROUND

The facts, as alleged by Plaintiff, are as follows. On the night of September 27, 2005, Plaintiff observed someone who turned out to be Defendant Timothy Richard Branham

---

[1] Pursuant to the provisions of Title 28, United States Code, § 636(b)(1), and Local Rule 73.02(B)(2)(e), D.S.C., the Magistrate Judge is authorized to review all pretrial proceedings involving litigation by individuals proceeding *pro se*, and submit findings and recommendations to this Court.

("Branham") in his carport examining his car. Plaintiff approached Branham, who was attempting to repossess the car, for which Plaintiff acknowledges he was delinquent in his payments. After a brief physical altercation, Branham left and went to an EMS facility to seek medical treatment. Branham then called police to report the assault, and Defendant Deputy Stephen Gates ("Gates"), of the Charleston County Sheriff Department, responded to the call along with Deputy Rood ("Rood"), who is now deceased. After arriving at the EMS facility and listening to Branham's report of the incident, the two officers went to Plaintiff's residence to question him about the alleged assault. The officers also discovered before arriving at Plaintiff's residence that there was an outstanding warrant for Plaintiff's arrest.

Upon arriving, Plaintiff informed Gates and Rood that when someone comes to repossess an automobile and are told by the owner to leave the property, they are required by law to do so. However, Plaintiff acknowledged striking Branham, and at that point, Rood arrested Plaintiff for the outstanding warrant, as well as for assault and battery for his actions in the physical altercation with Branham. Plaintiff again informed Rood that Branham could not repossess his automobile without a court order. At this point, Plaintiff alleges that Rood informed him that they had a federal court order for the repossession of the vehicle, but refused to show it to the Plaintiff. Rood ordered Plaintiff's son to move another vehicle, which was parked behind the vehicle Branham sought to repossess, so that Branham could take repossess the vehicle in question. At this point Rood left the premises with Branham in the back of the car.

Later, Branham returned to the scene with his tow truck and repossessed Plaintiff's vehicle. Gates was on the scene, but remained in his car throughout the repossession. After Branham repossessed the vehicle, Gates met Branham at the EMS facility and placed him under arrest, pursuant to an outstanding warrant for violating check laws.

2

According to Plaintiff, Rood and Gates knew about this outstanding warrant at the time they allowed Branham to repossess his car, but did nothing to stop it. At his bond hearing the following day, Plaintiff alleges that the bond court judge stated that Branham did not have legal papers entitling him to repossess the automobile.

Plaintiff filed a Complaint in the Charleston County Court of Common pleas, alleging eleven different causes of action: (1) that the actions of Rood, Gates, Cannon, and the Charleston County Sheriff's Department violated his constitutional rights because they went beyond the scope of their duty and committed illegal actions by placing him under false arrest and wrongfully aiding Branham in committing an unlawful repossession; (2) that Defendants, as well as Branham and his employer, Defendant Cypress Recovery, violated the Fair Debt Collection Practices Act because they "knew or should have known that the use of the Charleston County Sheriff Department and/or its Deputies to enforce any collection of a debt is illegal without a written court order;" (3) that Defendants violated Article 9 of the Uniform Commercial Code; (4) that Defendants' conduct violated the South Carolina Debtor Collection Action; (5) that their conduct constituted an "abuse of process and authority;" (6) that their actions constituted an unlawful civil conspiracy; (7) that their actions constituted a breach of the peace; (8) that their actions violated the "Castle doctrine;" (9) that their actions constituted an illegal search and seizure; (10) that their actions constituted an unlawful conversion of his property; (11) that their actions violated his right to liberty, privacy, and due process and equal protection, in violation of the Fourteenth Amendment.

Defendants removed this action to this Court on September 27, 2007. Defendants Gates, Cannon, and Charleston County Sheriff Department filed a Motion for Summary Judgment on August 26, 2008. Defendants Branham and Cypress Recovery filed a Motion for Summary

Judgment on August 29, to which Plaintiff filed a Response in Opposition to both Motions for Summary Judgment as well as a Motion for Summary Judgment of his own against those Defendants on September 19. Defendants Branham and Cypress Recovery filed a Response to Plaintiff's Motion for Summary Judgment on September 29, as did Defendants Cannon, Charleston County Sheriff Department, and Gates. Plaintiff filed separate Replies to these Responses on October 1 and October 3. On February 10, 2009, the Magistrate Judge issued his R&R, recommending that Defendants' Motions for Summary Judgment be granted as to all of Plaintiff's federal claims, and that Plaintiff's state law claims be remanded to state court for lack of jurisdiction. Plaintiff filed his timely Objection to the Magistrate Judge's R&R on March 2.

## **STANDARD OF REVIEW**

### I.    Magistrate Judge's Report & Recommendation

Magistrate Judges are empowered by statute to preside over pretrial matters on appointment by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Where, as here, a Magistrate Judge is "assigned without consent of the parties to hear a pretrial matter dispositive of a claim or defense of a party or a prisoner petition challenging the conditions of confinement. . .[t]he magistrate judge shall enter into the record a recommendation for disposition of the matter." Fed. R. Civ. P. 72(b). The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976).

Under Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), a District Court evaluating a Magistrate Judge's recommendation is permitted to adopt those portions of the recommendation to which no "specific, written objection" is made, as long as those sections are not clearly erroneous or contrary to law. *Thomas v. Arn*, 474 U.S. 140, 149 (1985). However,

4

where a party makes a specific, written objection within ten days of being served with a copy of the report, the district court is required to make a *de novo* determination regarding those parts of the report, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The court has reviewed the entire record, the R&R, and Plaintiff's Objections. The Court adopts the R&R into this Order.

## II. Summary Judgment

To grant a party's motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.' " *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut" but an important

mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## DISCUSSION

### I. Plaintiff's Claims Against Charleston County Sheriff's Office

The Court first addresses Plaintiff's claims against Defendant Charleston County Sheriff's Office. The Magistrate Judge recommended that this Court grant Defendant Charleston County Sheriff's Office's Motion for Summary Judgment because the Defendant was entitled to immunity from suit under § 1983 because it was an arm of the state government. Plaintiff has only asserted one nonspecific conclusory objection to this recommendation. However, the Magistrate Judge correctly applied the law that this Defendant, as an arm of the state government, is entitled to sovereign immunity from Plaintiff's § 1983 claims in this case. *See, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99.

Accordingly, Plaintiff's claims against Defendant Charleston County Sheriff's Office fail as a matter of law, and Defendant's Motion for Summary Judgment is granted.

### II. Plaintiff's Claims Against Cannon

The Court next turns to Plaintiff's claims against Defendant Al Cannon, the Charleston County Sheriff. Plaintiff is suing Cannon in his individual, not official capacity, so Cannon is not entitled to sovereign immunity. *See, e.g.*, *Gomez v. Toledo*, 466 U.S. 635, 640 (1980). The Magistrate Judge recommended that Cannon's Motion for Summary Judgment be granted because he had no personal involvement whatsoever in the underlying allegations in Plaintiff's case. While a supervisory official such as Cannon can be sued in an individual capacity under §

1983, there can be no liability for the actions of their inferiors under the doctrines of vicarious liability or respondeat superior. *Vinnedge v. Gibbs*, 550 F.2d 926, 926-29 (4th Cir. 1977).

In the present case, Plaintiff has not made a single allegation as to how any action taken by Cannon acted to deprive him of any constitutional right. While Plaintiff objects to this recommendation of the Magistrate Judge, he provides no specific reason why this Court should not adopt these recommendations as its holding other than to make vague allegations that Rood and Gates were acting pursuant to the policies of the Charleston County Sheriff Department. This is entirely insufficient to maintain any cause of action against Cannon under § 1983.

Accordingly, Plaintiff's claims against Defendant Cannon fail as a matter of law, and Defendant's Motion for Summary Judgment is granted.

### III.    Plaintiff's Claims Against Gates

The Court next turns its attention to Plaintiff's claims against Gates. According to Plaintiff, Gates was integrally involved in the decision not to arrest Branham, to wrongfully arrest Plaintiff, to lie to Plaintiff about the existence of a court order, and to illegally aid Branham in repossessing the automobile in question. The Magistrate Judge recommended that all of Plaintiff's claims against Gates be dismissed, and Plaintiff objected to this conclusion.

#### A. Plaintiff's Claim for Wrongful Arrest

Plaintiff claims that his constitutional rights were violated when Rood and Gates placed him under arrest. According to Plaintiff, the officers failed to adequately investigate the armed robbery charges, and only arrested him so that they could unlawfully help Branham repossess the vehicle. However, the record shows that this claim is not supported by the facts.

In order to state a claim for false arrest, a plaintiff must show that the arrest was made in the absence of a validly issued arrest warrant. *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir.

7

1998) ("[A] claim for false arrest may be considered only when no arrest warrant has been obtained."). In his pleadings and his Objections, Plaintiff persistently argues that Rood and Gates lacked sufficient grounds to arrest him for the assault and battery charge. However, Plaintiff continually fails to acknowledge that the record plainly shows that he was not even technically arrested for the assault and battery complaint, but for an outstanding warrant for failure to maintain records. After Rood and Gates responded to the call and met with Branham to hear his account of what happened, they performed a search on Plaintiff and discovered the outstanding arrest warrant. When Rood and Gates arrived at Plaintiff's residence, they placed him under arrest on the outstanding warrant. Accordingly, since Plaintiff was placed under arrest pursuant to a valid warrant, he cannot pursue a claim for false arrest.

Furthermore, even if Plaintiff had not had an outstanding warrant, Rood and Gates would have been entitled to make a lawful arrest of Plaintiff on the assault and battery complaint. Branham told police that Plaintiff had physically attacked him, and Gates reported that Branham's shirt had been ripped and it looked like he had been involved in an altercation. Based on this, the officers determined that they had probable cause to place Plaintiff under arrest. According to Gates' deposition testimony, Charleston County Sheriff's Department guidelines provide that where there is probable cause to issue a citation for assault and battery, officers are required to take the suspect into custody, and have no discretion over the matter due to the serious nature of the offense.

It also appears from the pleadings that Plaintiff is attempting to pursue a claim for violating his constitutional rights by placing him under false imprisonment. However, a plaintiff may not maintain a cause of action for false imprisonment where he has been arrested by law enforcement pursuant to a valid arrest warrant. *Jones v. City of Columbia,* 389 S.E.2d 662, 663

(S.C. 1990) ("An action for false imprisonment cannot be maintained where one is arrested by lawful authority.")

Accordingly, Rood and Gates were legally entitled to place Plaintiff under arrest, and Plaintiff has no legal claim for false arrest.

B.  Plaintiff's Claim that Branham Should Have Been Arrested

Plaintiff also claims that his constitutional rights are violated because after receiving the call regarding the assault and receiving information from emergency medical personnel, Rood and Gates met with Branham in a parking lot to hear his detailed account of the alleged assault and battery by Plaintiff.  It was at this point that they observed Branham's ripped shirt and disheveled appearance, from which they concluded that it did, indeed, look like he had been attacked.  However, at this point they also knew, from dispatchers, that there was an outstanding warrant for Branham's arrest.  Plaintiff claims that Gates violated his constitutional rights by not placing Branham immediately under arrest.

Plaintiff never puts forth a coherent theory as to how his constitutional rights could be violated by police's failure to arrest a third party.  A citizen does not have any sort of constitutional right to have any other citizen arrested.  While it is true that there was an outstanding warrant for Branham's arrest, the warrant was for a nonviolent offense, so there was no procedural requirement that he be immediately arrested.  This was particularly true under departmental guidelines, since Branham was alleging that he was the victim of an assault. Adopting Plaintiff's proposed immediate arrest requirement would have the extremely undesirable effect of deterring victims of rape, assault, and other violent acts who had outstanding warrants from reporting such crimes to the police for fear of being arrested themselves.

9

Accordingly, since Plaintiff had no constitutional right to force Rood and Gates to arrest Branham, their decision not to place him under immediate arrest was a reasonable decision in accordance with Charleston County Sheriff's Department guidelines, and Plaintiff's claim for § 1983 relief on this ground fails as a matter of law.

### C. Plaintiff's Claim for Unlawfully Aiding Branham in Repossessing the Vehicle

Plaintiff's next claim is that Gates violated his constitutional rights by unlawfully aiding Branham in repossessing his vehicle. Plaintiff asserts that his due process rights were violated by Defendant Gates' conduct because Rood and Gates had no legal authority to aid Branham in repossessing Plaintiff's vehicle. According to Plaintiff, Gates "at no time had any legal papers or court order which could be relied upon to search the vehicle, seizure of and take and/or repossess this vehicle . . . ." Due process requires notice and an opportunity to be heard before the government can assist a secured creditor in a repossession.

Plaintiff is correct that due process is violated when a police officer improperly assists a secured creditor in repossessing someone's property. However, in order for this to be the case, the officer in question must take an active role in the repossession—it is insufficient for the officer to be "merely present" during the repossession. *Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998). Similarly, police officers may be present at the request of the creditor to ensure that no violence or trouble occurs, so long as they are not actively aiding the repossession. *United States v. Coleman*, 628 F.2d 961, 964 (6th Cir. 1980). The case of *Sherry v. Associates Commercial Corp.* involved facts very similar to this one. 60 F. Supp. 2d 470 (W.D. Pa.), *affirmed*, 191 F.3d 445 (3d Cir. 1999). In that case, the creditor presented police with an illegible document, which the police officer in turn told the debtor was a "repo order." *Id.* at 472. The officer told the debtor that he had to "let them have the trucks." *Id.* Based upon this, the plaintiffs did not stop

10

the repossession. The court there held that the police officers were only on the scene to preserve the peace, and despite their actions, their "aid was not significant since it contributed nothing to the remedy of self-help repossession which [the creditor] was free to pursue in the officers' absence." *Id*. at 475.

As previously stated, Rood is now deceased, and is not a party to this action. Accordingly, Plaintiff may not seek relief for the actions of Rood. However, in his pleadings and in his Objection to the Magistrate Judge's R&R, Plaintiff persistently attempts to conflate the actions of the two officers. He repeatedly uses phrases like "Deputy Rood and Deputy Gates acting in unison and jointly" and ascribing actions taken by Rood to "the deputies." However, an examination of the undisputed record shows that while Gates was present for the underlying allegations, he was little more than a bystander to the events.

The undisputed record shows that it was Rood who told the Plaintiff that he had an order signed by a federal judge ordering the repossession, and it was Rood that told the Plaintiff's son that he needed to move the car behind the vehicle Branham was attempting to repossess. According to Plaintiff's own son's version of the events, his contact was "pretty much with [Rood]," and that Gates just "pretty much stood off by the car and was just observing what was going on." (Mitchell depo. at 22.) The actual repossession itself did not take place until Plaintiff was taken away by Rood in his police car. Plaintiff's son also stated very explicitly that, after Plaintiff had been arrested and taken away from the property by Rood, Gates stayed in his car the entire time until Branham had repossessed the automobile.

As the Magistrate Judge correctly noted, these facts may have been sufficient to establish an issue of material fact as to whether or not *Deputy Rood* violated Plaintiff's due process rights by unlawfully aiding Branham in his repossession of the vehicle in question. However, the

11

actions of Rood are not imputed to Gates, so this Court can only examine whether the actions of Gates somehow violated Plaintiff's constitutional rights. When looking over Plaintiff's accusations regarding the repossession, the Court must come to the conclusion that they did not. As explained above, Plaintiff has not alleged that Gates made any representations about the existence of a court order, and has not alleged that Gates told him or his son that the car parked behind the vehicle Branham was seeking to repossess had to be moved so that Branham could tow away the vehicle. Instead, the allegations show that Gates was present in more of a back-up capacity to Rood, and mainly stayed in or around his car while Rood interacted with Plaintiff. Gates did not directly help Branham repossess the vehicle after Rood had left with Plaintiff, but only stayed and monitored the situation to ensure that there was no violence. The allegations against Gates fall squarely under the "mere presence" or peacekeeping exceptions recognized by courts, which are insufficient to sustain a claim for relief under § 1983.

Accordingly, since Plaintiff has failed to establish an issue of material fact as to whether or not Gates played an active role in aiding Branham in his repossession of Plaintiff's vehicle, Plaintiff's constitutional claim against Gates on these grounds fails as a matter of law.[2]

### D. Plaintiff's Claim for Unlawful Search

Plaintiff also claims that Gates violated his Fourth Amendment rights by searching the automobile prior to Branham's repossession of it. Plaintiff's son claims that he saw Gates search

---

[2] The Court makes note of the fact that Plaintiff makes extensive allegations about a prior incident between him and Gates, in which Gates played a part in a prior repossession of another of Plaintiff's vehicle. However, these allegations are wholly irrelevant to the matter of hand. If anything, Plaintiff's allegations strengthen Gates' case for summary judgment. During the previous encounter, in which Plaintiff had threatened to shoot a tow truck driver who arrived to repossess the vehicle, Gates told the tow truck driver that he had to leave Plaintiff's property. All these allegations show is that Gates had been to Plaintiff's property before to keep the peace, and had prevented a repo man from repossessing a vehicle of Plaintiff's. Plaintiff seems to be asserting this to show that Plaintiff knowingly violated the law to enact some sort of revenge upon Plaintiff, but this is in no way supported by logic or the record in this case.

the automobile prior to Branham towing it away.  However, the Magistrate Judge recommended that this Court grant Defendant Gates' Motion for Summary Judgment on this claim because Plaintiff lacked standing to assert such a claim.  In his Objections, Plaintiff filed no specific objection to this recommendation.  Accordingly, this Court need only review the Magistrate Judge's recommendation on this count to see if it was a clearly erroneous interpretation or application of the law.  After reviewing the R&R, the Court is satisfied that the Magistrate Judge correctly applied the relevant law to this case.

As the Magistrate Judge noted, Plaintiff does not allege that anything of value was recovered or taken during the search of the automobile, so he suffered no financial, legal, or otherwise tangible harm from Gates' alleged search.  This does not serve as a total bar to recovery under § 1983, since Plaintiff could still conceivably recover nominal damages if the search was indeed unconstitutional.  However, the records show that the vehicle in question did not even belong to Plaintiff, but was actually in his wife's name.  Therefore, any injury from such a search would have been suffered by Plaintiff's wife, and Plaintiff himself would have been unaffected.  A plaintiff may not bring suit to vindicate the constitutional rights of a third party.  *Miner v. Brackney*, 719 F.2d 954, 956 (8th Cir. 1983); *see also Singleton v. Wulff*, 428 U.S. 106, 113 (1976) ("Federal Courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation.").

Accordingly, since Plaintiff does not have standing to allege a constitutional violation based upon a search of the automobile, this claim fails as a matter of law.

### IV.     Plaintiff's Claims Against Branham and Cypress Recovery

Plaintiff is also seeking relief under § 1983 for the actions of Branham and Cypress Recovery. Plaintiff alleges that they wrongfully repossessed his automobile, engaged in a civil conspiracy, and violated numerous provisions of South Carolina law in repossessing his vehicle. The Magistrate Judge recommended that Defendants' Motion for Summary Judgment be granted because Plaintiff had not established an issue of material fact as to whether or not Defendants were acting as state actors at the time of repossession.

Actions taken by a private individual or corporation are generally not deemed to be the actions of a state actor for § 1983 purposes unless the state has so directed or dominated the activity that it functionally becomes a state action. *Debauche v. Trani*, 191 F.3d 499, 506-07 (4th Cir. 1999), *cert. denied* 529 U.S. 1033 (2000). A private actor may be held liable under § 1983 if it performs a private action "because of a state-enforced custom," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 171 (1970), or if "the function performed [is] traditionally the exclusive prerogative of the state." *United Auto Workers v. Gaston Festivals, Inc*., 43 F.3d 902, 906 (4th Cir. 1995). The Fourth Circuit has outlined the situations in which a private actor may be said to be a state actor for § 1983 purposes:

> A handful of contexts have been identified in which we can be confident that the conduct of an ostensibly private actor is under color of law for purposes of section 1983. The first exists where, " 'in light of all the circumstances,' . . . the Government did more than adopt a passive position toward the underlying private conduct." In that situation, a "private party should be deemed an agent or instrumentality of the Government." Second, if the state delegates its obligations to a private actor, the acts conducted in pursuit of those delegated obligations are under color of law. Third, "[o]ne of the paradigmatic means by which a private party becomes subject to section 1983 is through the government's conferral upon that party of what is, at core, sovereign power." In other words, a private actor is responsible as a state actor if "the function performed [is] traditionally the exclusive prerogative of the State." Fourth, "private use of . . . challenged state procedures with the help of state officials constitutes state action."

*Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 342 (4th Cir. 2000) (citations omitted).

It is undisputed that both Branham and Cypress Recovery are private actors, and are not formally affiliated with the state, local, or federal government in any way. However, Plaintiff claims that the conduct of Branham and Cypress Recovery was so directed and controlled by the government that they are state actors, and thus subject to liability under § 1983.

Plaintiff's contention is without merit. Branham and Cypress Recovery were acting for their own purpose, not the state's. Plaintiff has produced no evidence whatsoever to support a finding that Defendants' action were due to a "state-enforced custom" or that Defendants were performing actions normally performed by the State. Nor had Defendants been somehow deputized as agents of the government.

While it is true that private actors can be sometimes held to be state actors for § 1983 purposes, this is true only where the government takes such affirmative action to "act together with" the government in a repossession. *Barrett v. Harwood*, 189 F.3d 297, 304 (2d Cir. 1999). Courts have held repossession agents to be state actors for § 1983 purposes where the government took an active role in the repossession, *see, e.g.*, *Soldal v. Cook County*, 506 U.S. 56 (1992), but only where there was evidence of clear coordination, cooperation, or conspiracy between the government and the private actors.

Here, however, there is no evidence that there was coordination or conspiracy to deprive Plaintiff of his constitutional rights. The facts show that Plaintiff was arrested not so that Branham could repossess the vehicle, but rather because Plaintiff allegedly physically assaulted him. While it is true that Rood lied to Plaintiff and told him that there was a court order for the repossession, and later told Plaintiff's son to move the truck from behind the vehicle, there is

15

absolutely no evidence in the record at all that he did so at Branham's request, or that Branham even knew that this was being done. At the time, in fact, Branham was receiving medical treatment, and was apparently nowhere on the premises.

While there is no doubt that Branham benefited from Rood's actions, it does not automatically follow that he was behind them. Plaintiff has produced no evidence whatsoever that this was, in fact, the case. While Plaintiff has repeatedly alleged some sort of conspiracy between Branham and the police officers in question, the record does not support these allegations and Plaintiff can provide no specifics. Vague, conclusory, self-supporting statements are insufficient to establish an issue of material fact. *See, e.g.*, *White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976). Here, Plaintiff's allegations only establish an issue of material fact as to whether or not Branham was an unintended beneficiary of Rood's actions, not whether or not Rood and Branham planned and conspired to repossess Plaintiff's vehicle.

Accordingly, since Plaintiff has produced no evidence that Branham or Cypress Recovery conspired with Rood or even had any knowledge of Rood's actions, his claims that Branham and Cypress Recovery were acting under color of state law fail as a matter of law, and those parties may not be held liable under § 1983.

**V.     Plaintiff's Claim Under Fair Debt Collections Practices Act**

In his Complaint, Plaintiff also asserts a claim for relief under the Fair Debt Collections Practices Act ("FDCPA"). Plaintiff does not cite to any specific provision of the FDCPA which gives him grounds for relief, and only claims that Defendants, in concert, unfairly repossessed his vehicle. However, as pointed out by the Magistrate Judge, Plaintiff fully acknowledges that he entered into a loan agreement with Auto Money Title Loans, for which the vehicle in question was offered as collateral. Plaintiff acknowledges that the loan went into default, and that he was

16

given notice of this default and informed of the creditor's right to repossess the vehicle if he stayed in default on the loan.

It is a well-accepted practice, and one explicitly authorized by South Carolina law, for a secured party to repossess collateral for a loan in default. As long as no breach of the peace occurs, no violation of South Carolina law has occurred. S.C. Code Ann. § 36-9-603. This Court can discern no provision of the Act in question which has been violated in this instance, and Plaintiff's claim for relief under the Fair Debt Collections Practices Act therefore fails as a matter of law.

## VI.     Plaintiff's Claim that the Wrong Vehicle Was Repossessed

Plaintiff also seems to be claiming that the wrong vehicle may have been repossessed by Branham and Cypress Recovery. However, a review of the record indicates that this claim is without merit. This assertion relies entirely upon the information contained in the police report. A report must be filed with the police by the creditor whenever an involuntary repossession occurs. While Plaintiff asserts that it was Branham who called this information in to the police (which is a purely speculative conclusion not based upon any information in the record), it is ultimately irrelevant. While the information called in to the police regarding the automobile was incorrect, the correct car was, in fact repossessed. While Plaintiff had two separate Mercedes, the vehicle on which Plaintiff was delinquent in payment was a black 1991 Mercedes, which was the vehicle repossessed by Branham. Plaintiff has even since gotten the car back, further showing that the correct car was repossessed. Significantly, Plaintiff never explicitly claims that the wrong car was repossessed, but only emphasizes that the information in the report was incorrect, which is a fact of no legal consequence.

17

Accordingly, to the extent that Plaintiff may be attempting to assert a claim for relief based upon the report containing erroneous information, such a claim fails as a matter of law.

## VII.    Plaintiff's State Law Claims

The remainder of Plaintiff's causes of action seek relief under South Carolina state law. However, as the Magistrate Judge noted, this Court would only have supplemental jurisdiction over such claims if Plaintiff had stated a claim for relief under federal law.  Federal law provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367.

In the present case, as explained above, Plaintiff has failed to establish an issue of material fact on any of his claims under § 1983 or any other federal cause of action.  Since these were the only claims Plaintiff brought under federal law, and therefore the only claims over which this Court has original subject matter jurisdiction, the only claims which remain are Plaintiff's claims brought under state law.   Therefore, this Court declines to exercise supplemental jurisdiction over those claims, which would more properly be brought before a state court.  The statute of limitations on those actions has tolled while the present action is pending, and Plaintiff is therefore free to file those actions in the appropriate state court.

## **CONCLUSION**

For the foregoing reasons, the court adopts the recommendation of the Magistrate Judge and **GRANTS** Defendants' Motions for Summary Judgment. For the foregoing reasons, it is further **ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED**.

**AND IT IS SO ORDERED.**

*PATRICK MICHAEL DUFFY*
United States District Judge

**Charleston, South Carolina**
**March 26, 2009**